THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v JEAN PHILLIPE, Defendant.

Criminal Court of the City of New York, Kings County, February 1, 1989

## APPEARANCES OF COUNSEL

*John M. Leventhal* for defendant. *Elizabeth Holtzman,* District Attorney (*Quentin Moore* of counsel), for plaintiff.

## OPINION OF THE COURT

MICHAEL D. STALLMAN, J.

Defendant moves to dismiss, claiming that the accusatory instrument was not timely converted to an information. Defendant asserts that the supporting depositions of the child witnesses were not properly verified. At issue is whether a particular statutory method of verification is required of child witnesses. Three underlying questions of first impression must be considered: What form and content are required of a supporting deposition? What mental capacity and understanding is required of a deponent? May a verification be challenged thereafter, and if so, by what process?

### FACTS

Defendant was arrested on September 23, 1987 and charged on a hearsay felony complaint with rape in the first degree (Penal Law § 130.35 [1], [3]) and endangering the welfare of a child (Penal Law § 260.10 [1]) on allegations of two children below the age of 12. Although waived to the Grand Jury on November 10, 1987, the case was never presented.

On March 10, 1988, the case was returned to the Criminal Court on the motion of the District Attorney, who affirmed without explanation that felony charges were "not appropri-

ate."[1] The District Attorney thereupon filed a superseding misdemeanor complaint which charged defendant with sexual misconduct (Penal Law § 130.20 [1]), sexual abuse in the second degree (Penal Law § 130.60 [2]) and endangering the welfare of a child (Penal Law § 260.10). The District Attorney simultaneously served and filed two supporting depositions, commonly referred to as corroborating affidavits, of the two infant complaining witnesses, Alexandra and Jeanne L. The depositions are the computer-generated forms in standard use in Kings County, containing the boilerplate notice that the named witness has read the accusatory instrument, that the facts stated therein were furnished by the witness and that they are true based on the witness's personal knowledge. Immediately above the signature line, the form contains this notice: "False statements made in this document are punishable as a class A misdemeanor pursuant to Section 210.45 of the Penal Law."[2] Each document is dated "2/16/88" and is purportedly signed by one of the children. On that date, Alexandra was 11, and Jeanne was 10 years old. Based upon these depositions, and the assumption that they effected conversion of the complaint to an information, the defendant was arraigned and the People announced their trial readiness[3] on

---

1. The People subsequently disclosed that the two witnesses each gave conflicting accounts of the incident, accounts which they later altered. The prosecutor properly disclosed inconsistencies which cast considerable doubt on the witnesses' credibility. (See, Brady v Maryland, 373 US 83; People v Jones, 70 NY2d 547.) Whether the reduction was proper, under these circumstances, is another question. Felony cases perceived as weak or problematic are frequently reduced to misdemeanors on the prosecution's request, thereby "dumping" some of the most serious and difficult cases on the least experienced Assistant District Attorneys. Reduction circumvents the need to present felony charges to the Grand Jury, which could dismiss the charges were it to disbelieve the witnesses. (See, CPL 190.75.) Such a reduction raises serious ethical questions if effected because the prosecutor finds his witnesses unreliable or incredible.

2. CPL 100.30 (1) (d) provides that any instrument requiring verification "may bear a form notice that false statements made therein are punishable as a class A misdemeanor pursuant to section 210.45 of the penal law, and such form notice together with the subscription of the deponent constitute a verification of the instrument."

Penal Law § 210.45 (making a punishable false written statement) provides that a person is guilty "when he knowingly makes a false statement, which he does not believe to be true, in a written instrument bearing a legally authorized form notice to the effect that false statements made therein are punishable."

3. When a felony complaint is replaced by a misdemeanor complaint, the People must declare their readiness for trial on a valid information within

March 10, 1988. Protracted motion and calendar practice then ensued.

CONTENTIONS OF THE PARTIES

Defendant contends that the purported verification by the child witnesses was ineffective, since their infancy would shield them from prosecution for any false statement. Moreover, defendant argues that verification by a child under 12 may be effected only by either of the following methods: An Assistant District Attorney should conduct a private voir dire of the child witness, outside of court, to determine the child's capacity to take an oath, and then file an attesting affirmation along with the child's supporting deposition. In the alternative, the prosecutor may bring the child before the court for such an inquiry.

The People argue that no unique procedure is statutorily mandated for verification by a child witness. Rather, the People claim that the forms used, and procedures followed, complied with law and sufficed to adequately convert the complaint to an information on March 10, 1988, some 14 days before the legal deadline. The People further argue that since the court did not initially specify a particular method of a verification, the verification cannot now be challenged. For the reasons stated *infra,* the court disagrees with the reasoning of both sides.

ANALYSIS

A. Conversion to an information

A defendant charged with a misdemeanor has an absolute right to be tried by information. (CPL 170.65 [1], [3].) In order to constitute a legally sufficient information, an accusatory instrument must consist of verified, nonhearsay allegations which would establish, if true, the defendant's commission of every element of each offense charged. (CPL 100.10 [1]; 100.15 [1], [3]; 100.40 [1] [c]; *People v Alejandro,* 70 NY2d 133.) This requirement is not merely a formalistic technicality. Rather, it is grounded in accepted concepts of fairness and due process. It not only gives the defendant notice while binding the

---

either 90 days of the reduction, or six months of the filing of the felony complaint, whichever date arrives first. (CPL 30.30 [5] [c].) In the instant case, the felony complaint was filed on September 24, 1987; the People were thus obligated to convert to an information and announce readiness by March 24, 1988.

prosecutor, it enables the court to impartially review the charges. Requiring that a nonhearsay accusation be filed as a condition precedent is a minimal but significant indication that the prosecution is legitimate. It reduces the possibility that one could be unjustly forced to stand trial by an overzealous or negligent prosecutor based on an indirect, incomplete, or inadequately investigated accusation. When an accusatory instrument is signed by an alleged crime victim, it is apparent that a real person actually complained to the police and had an opportunity to review the accuracy of the factual allegations drafted by the prosecutor.

Thus, a misdemeanor complaint, which may contain allegations based on hearsay (see, People v Tennyson, 19 NY2d 573), must be replaced by an information, or "converted" to an information. Conversion is accomplished by filing and serving supporting depositions which, when read in pari materia with the complaint, allege nonhearsay allegations sufficient to constitute an information. (CPL 100.15 [3]; 170.65 [1].)

A supporting deposition is a verified written statement based on personal knowledge, containing "factual allegations of an evidentiary character" supplementing and tending to support the charges. (CPL 100.20.) The phrase "factual allegations of an evidentiary character" means nonconclusory descriptions of what the deponent personally observed, heard or experienced. (See, People v Dumas, 68 NY2d 729.) In short, it requires the written equivalent of competent and relevant testimony which the deponent could give orally if called as a witness.

■ The supporting depositions here at issue do not contain any additional factual allegations relating to the criminal transactions charged; indeed, they contain no allegations whatsoever about the charges themselves. A close reading of the statute, however, discloses that such content, while permitted, is not required. Rather, the form language of these depositions contains three "factual allegations of an evidentiary character": First, the deponent read the complaint; second, the deponent was the source of the hearsay recited in the complaint; and, third, the allegations are true based on the deponent's personal knowledge. The requirement that a supporting deposition's allegations tend to support the charges is satisfied by factual assertions showing that the deponent is aware of the charges and adopts them as his own. To hold that it is not sufficient would require that any *Tennyson*

complaint based even partly on hearsay *(see, People v Tennyson, supra)* be replaced by a newly drafted, nonhearsay superseding information, if the source of the hearsay were attesting to the charges without change or addition. Such a view would conflict with the manifest intent of CPL 170.65, providing for conversion via supporting deposition and would needlessly complicate the process. Thus, if properly verified, each of the supporting depositions at issue would be legally sufficient, and together would have converted the complaint to an information.

B. Verification of the supporting depositions

Verification of a document is the written equivalent of a testimonial oath. However effected—by oath or affirmation in open court, by oath before a public officer or notary, or by self-attestation—the object is the same: It alerts the witness that his statement has jural effect, on himself as well as on others. While it is no guarantee of truthfulness, neither is it meaningless ritual. The oath not only places the witness on notice that he must speak the truth, it serves as the foundation for a subsequent perjury prosecution. *(See, People v Parks,* 41 NY2d 36; McCormick, Evidence § 245, at 727 [3d ed]; Proposed NY Code of Evidence § 603, Comment.) Indeed, it is the ritualistic quality of the oath, affirmation or attestation procedure which reminds the witness of his obligation. *(See,* Siegel, NY Prac § 388, at 506.)

Verification is an especially important safeguard in criminal proceedings. The requirement of direct, firsthand accusation would be rendered meaningless if the accuser could not be held accountable for false, inaccurate or misleading statements. Verification also encourages prosecutors to assure that their witnesses are accurate and reliable. When a complaining witness, police officer, or prosecutor verifies an accusatory instrument, he does so at his peril. Negligent or even innocent discrepancies can be used for embarrassing and damaging cross-examination.

Inherent in the verification requirement are several assumptions. First, the deponent must have testimonial capacity at the time of the verification. In order to attest to a document's truthfulness, one must recognize the distinction between truth and falsehood, understand the obligation to tell the truth, and appreciate the consequence of speaking falsely. Second, the deponent must read and understand the contents of each document, including any legal concepts or jargon used

by the drafters.[4] Third, the verification procedure must be performed in a manner that both complies with the formal requirements of statute and impresses upon the deponent the realization that he is performing a jural act. For example, if the deponent is told merely to sign a document, and neither knows nor is made to understand that his signature is the equivalent of an oath, the act has no legal significance even if it had been performed in the presence of a notary or other person legally empowered to administer an oath. Verification accordingly requires greater mental capacity and understanding than oral testimony under oath.[5]

■ Consequently, if the deponents at bar signed the depositions without a contemporaneous understanding of the self-attestation warning printed above the signature line, the signature cannot be deemed effective verification. These considerations strike at the very purpose of verification and accordingly must be deemed substantive requirements. The failure to properly sign and verify an accusatory instrument or supporting deposition therefore cannot be regarded as a mere irregularity curable[6] at any later date, after expiration

---

4. Of course, even an average adult, whose competency does not appear questionable, might subscribe to a supporting deposition without having read or understood its contents, or without having comprehended its form warning. Ordinarily, that circumstance is only discovered during cross-examination at trial. *(See, People v Whetson,* 135 Misc 2d 1 [guilty verdict set aside based on complainant's admission on cross-examination that he had never seen the complaint].)

5. It may be that certain crime victims are incapable of verifying a deposition in accordance with law. Even literate children, for example, may be unable to understand the legal prose and underlying concepts contained in the documents at issue. That is no excuse, however, for overlooking legal requirements. Conversely, just because a crime victim cannot verify, does not mean that a case cannot be prosecuted. Rather, the District Attorney has the option of presenting any case to the Grand Jury, even if no felony is initially charged. (CPL 190.55.) A witness incapable of verifying may have the capacity to be sworn, and can then testify under oath in the Grand Jury. Indeed, even a child below 12 who is incapable of being sworn may give unsworn testimony if the child is reliable. (CPL 60.20; *People v Groff,* 71 NY2d 101; *see, People v Bryan S.,* NYLJ, Sept. 12, 1985, at 6, col 6 [Crim Ct, NY County].) Unsworn testimony alone, however, is insufficient to support a prosecution. (CPL 60.20 [3]; 190.65 [1].)

6. The instant supporting depositions contain wording similar to the form verification routinely used in civil proceedings. *(See,* CPLR 3020 [d]; 3021.) A defective civil verification can be cured or disregarded if no substantial right is prejudiced. *(See,* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3022:2, at 396; CPLR 3026.) Such can never be the case in a criminal proceeding. To ignore a defective verification would necessarily prejudice a substantial right of a criminal

of the speedy trial period. Thus, if the supporting depositions at issue were not properly verified, their filing would not have converted the complaint to an information.

C. Verification by children

The New York verification statute draws no explicit distinction between adults and minors. Neither does it restrict verification by children below the age of 12. *(See,* CPL 100.30.) New York law neither permits nor excludes oral testimony solely based on age. At common law there was no arbitrary age below which children were deemed incompetent to testify. (4 Blackstone, Commentaries § 214, at 1376; *Rex v Brasier,* 1 Leach 199 [1779]; *Wheeler v United States,* 159 US 523, 524-525.) Rather, whether to allow any particular child to testify was a matter of judicial discretion. The Trial Judge questioned the proposed witness to evaluate intelligence, maturity and understanding of the obligation to tell the truth. This practice of determining a child witness's capacity by a judicial voir dire has continued in New York notwithstanding the absence of any specific statutory authorization. *(See, People v Nisoff,* 36 NY2d 560, 566; *see also,* Altman & Lennon, *Child Witnesses In Felony Trials—Competency and Protection,* NYLJ, Mar. 19, 1986, at 1, col 3.)

■ The common-law practice has been modified in New York criminal proceedings by statutorily fixing 12 as the presumptive age of competence. CPL 60.20 sets up a rebuttable presumption that persons above 12 are capable of understanding the oath, and that those below 12 are not. It does not eliminate the Judge's discretion to determine whether or not the witness is competent; indeed, it presupposes it. *(See, People v Nisoff, supra.)* Rather, the Legislature thereby advised the courts to give greater scrutiny to the mental development and reliability of child witnesses under 12.

Based on an assumption that the competence presumption

defendant: the absolute right, unless expressly waived, to be prosecuted by a nonhearsay information within a finite period of time. (CPL 170.10 [4] [d]; 30.30.) In civil practice, a defectively verified pleading can be treated as a nullity, if the adversary gives notice with due diligence. (CPLR 3022; *Matter of Lentlie v Egan,* 94 AD2d 839, *affd* 61 NY2d 874.) The absence of a similar notification/rejection provision in the Criminal Procedure Law means that the prosecution always bears the burden of assuring proper verification. The defense has no obligation to notify the prosecutor of the defect. Thus, the defense should not be estopped from raising the defect long after the People answered "ready". At issue is whether the People actually were ready when they claimed readiness on March 10, 1988 and thereafter.

applies to the verification of documents, several recent cases have fashioned unique but differing verification requirements for child witnesses. *(People v King,* 137 Misc 2d 1087; *People v Pierre,* 140 Misc 2d 623; *People v Cortez,* 140 Misc 2d 267.) Each case requires an examination of the child witness not explicitly required by the verification statute, in order to complete or perfect the act of verification. Their varied approaches have caused some confusion in New York criminal practice, especially among prosecutors. Since any delay in conducting the examination would apparently be chargeable against the People under the speedy trial act (CPL 30.30), many cases involving child witnesses may well have become stale and unprosecutable.

In *People v King (supra,* at 1090-1091), the court required the prosecutor to conduct a private voir dire to ascertain the child's ability to understand the oath. If satisfied that the child is swearable, the prosecutor would file a supporting affirmation attesting to the child's capacity, along with the supporting deposition of the child, and thereby convert the complaint to an information.

In *People v Pierre (supra),* the court held that a child below 16 could not sign a supporting deposition pursuant to CPL 100.30 (1) (d), because, as one below the age of criminal responsibility *(see,* Penal Law § 30.00), the child could not be prosecuted for a violation of Penal Law § 210.45 (making a false written statement). The court ruled that a child below 16 must verify by swearing before the court with which the instrument is filed (CPL 100.30 [1] [a]). At that time, the court must conduct an ex parte proceeding on the record with the child's parent present, to determine if the child can be sworn.

In *People v Cortez (supra),* the court held that any of the statutory verification methods could be used by children under 12. Verification would not be complete, however, until the child was brought before the court and demonstrated sufficient mental capacity in a voir dire conducted solely by the Judge in the presence of counsel.

Other cases have interpreted the verification statute narrowly, as not requiring any additional act for verification not specified in the statute. *(People v Malone,* 140 Misc 2d 602 [13-year-old deponent]; *People v Wiggans,* 140 Misc 2d 1011 [11-year-old deponent].) In each case the court found that the filing of the supporting deposition was itself sufficient to convert the instrument to an information and toll speedy trial

time. It apparently held that once a facially sufficient verification is filed with the court it is not subject to challenge on competency or sufficiency grounds. The court noted that the child's competence could be later tested at trial, but apparently did not regard that inquiry as affecting the validity of the verification.

This court cannot accept the analysis of any of these cases or that of either side in the case at bar. First, the vitally distinct roles of Judge and prosecutor have been confused. Second, the correct relationship between the verification statute and the testimonial competence presumption has not been recognized.

Whenever a witness is called, evidence offered, or a document submitted, the court and the attorneys have complementary but distinct roles. While a Judge must consider the lawyers' arguments regarding admissibility, it is the Judge, not any attorney, who must ultimately decide the issue. In order to decide whether a proffered document, evidence or witness, should be considered, the Judge is often required to make a preliminary examination to determine whether it satisfies the legal requirements for admissibility, including competence, relevance and materiality. The decision to admit or exclude something from consideration is an inherent, non-delegable part of the judicial function. Whether to make a preliminary inquiry, and if so, how to conduct it, is inherently within a Judge's discretion. This principle is fundamental to insuring the fairness and impartiality of the judicial process. It would therefore be meaningless if limited only to trial. Rather, it is applicable to all stages of every judicial proceeding.

Thus, whenever a supporting deposition is proffered by the District Attorney, a Judge need not automatically accept it without question, even if it appears to be facially sufficient. *(Cf., People v Wiggans, supra; People v Malone, supra.)* To hold, as the People wish, that such a document is not subject to challenge, would make the prosecutor the sole Judge of a self-serving statement which he himself prepared to satisfy one of his own legal obligations. It would mock the very purpose of verification as an indication of the prosecution's bona fides.

Similarly, whenever a voir dire of a witness is required for any court proceeding, it should be done by the Judge. To permit a prosecutor to do so privately is to inappropriately delegate a uniquely judicial responsibility to an interested

party. Any such examination would be suspect and purposeless since it would not provide any impartial assurance of the witness's reliability. A prosecutor, like any attorney, vouches for the veracity of evidence he offers; he should not be permitted to determine its admissibility. It is of no significance that the District Attorney performs that function in the Grand Jury.[7] *(Cf., People v King, supra,* 137 Misc 2d, at 1089-1090; CPL 190.25 [6]; 190.30 [6].) The District Attorney functions as the legal advisor to the Grand Jury only because the statute specifically grants such authority; that role must be exercised under the supervisory authority of the empanelling court and is subject to review. *(See, People v Groff,* 71 NY2d 101.) The prosecutor occupies no such "of counsel" role with the court.

What, then, is the correct relationship between the testimonial competence presumption of CPL 60.20 and the verification requirements of CPL 100.30? It is clear that they share a common purpose: Each seeks to prevent unreliable statements from being accorded legal effect; conversely, each seeks to facilitate the reception of statements by persons presumed to be reliable. Each implicitly requires that the court affirmatively exercise its discretion to determine admissibility. Thus, both provisions should be read in pari materia and harmonized to effect their common purpose.

The verification statute (CPL 100.30) must be understood as intending an expansion of judicial discretion. The framers of the Criminal Procedure Law sought to substitute a more flexible system of verification for the prior cumbersome procedure which, *inter alia,* required swearing before the court. *(Compare,* CPL 100.30, *with* former Code Crim Pro § 148; *see,* Commn on Revision of Penal Law and Criminal Code, Mem in Support and Explanation of Proposed Criminal Procedure Law, at 10.) Providing alternate methods of verification was intended to minimize witness inconvenience, conserve court time and speed the process. The 1984 amendment, permitting verification before a notary public, was intended to further expand the range of formal alternatives, without altering the substantive requirements of capacity and understanding required for any verification. (CPL 100.30 [1] [e], as added by L 1984, ch 201, § 1; *see,* Bellacosa, 1984 Supp Practice Commen-

---

7. CPL 190.30 (6) provides: "Wherever it is provided in article sixty that the court in a criminal proceeding must rule on the competency of a witness to testify or upon the admissibility of evidence, such ruling may, in an equivalent situation [in the Grand Jury], be made by the district attorney."

taries, McKinney's Cons Laws of NY, Book 11A, CPL 100.30, 1989 Pocket Part, at 13.)

Since its original codification in 1970, the verification statute authorized the court to expressly designate a particular method of verification. (CPL 100.30 [2].) This subdivision permits Judges to prospectively fashion procedures appropriate to the unique circumstances of each case, including the nature of each deponent. Thus, if a Judge has reason to doubt the testimonial capacity, English literacy, credibility or independence of any witness regardless of age, it would be appropriate to direct the prosecutor to have that person swear before the court.[8] Contextually, this provision was intended to expand a court's authority to manage an ongoing case. Contrary to the People's position, it does not foreclose inquiry into the integrity of a verification once effected.[9] Judicial inquiry is appropriate regardless of the method of verification employed, whether or not it had been prospectively mandated by the court. Therefore, if the Judge doubts the genuiness of a document or the voluntariness or sincerity of its execution, or suspects that the verification procedure was so perfunctory or pro forma as to fail to convey its significance, the deponent should be brought before the court. If the deponent does not understand both the contents of what he signed and the legal significance of his act, at the time of signing, the purported "verification" would have been empty ritual.

The competence presumption (CPL 60.20) is a standard for the exercise of judicial discretion, not a bright-line distinction automatically determining admissibility. It evinces a legislative generalization that the reliability of children under 12 must be given greater scrutiny than that of children 12 and older. It must be understood as a statutory rule of evidence allocating the burden of proof on the issue of competency.

---

8. Of course, the court has the inherent power to conduct an appropriate preliminary inquiry into whatever issues may prompt the court to summon the witness.

9. Such inquiry, contrary to the People's position, is not barred by the law of the case doctrine. A decision is law of the case only if it already necessarily determined the same issue. (See, Siegel, NY Prac § 448, at 593-594.) Prospective direction that a particular method of verification be used (CPL 100.30 [2]) implicitly requires that it be properly effected. Whether it was properly effected is obviously a different issue which can only be decided at a later time. Conversely, when a court makes no such prospective direction, it is implicitly permitting any of the statutorily authorized methods. A Judge does not, and cannot, opine on the sufficiency of an act not yet performed.

First, it would be illogical, and inconsistent with the broad legislative context, to limit CPL 60.20, as the People ask, to oral testimony only.[10] Especially given the higher level of understanding needed for verification compared with oral testimony, it would make no sense to require great scrutiny of an under 12's oral statement while preventing any scrutiny of the same child's alleged written statement. Moreover, if the competence presumption were so limited, misdemeanor prosecution could be brought to the eve of trial totally without competent evidence.[11]

Second, since CPL 60.20 is applicable to all witness statements irrespective of the form, time or place of utterance, it is a standard for judging any verification, irrespective of how it was effected. To hold that it limits the available method of verification *(see, e.g., People v Pierre,* 140 Misc 2d 623, *supra)* or requires the performance of an additional act to perfect a prior verification *(see, e.g., People v Cortez,* 140 Misc 2d 267, *supra)* would be a non sequitur.

Finally, the inability to prosecute a child for making a false written statement does not automatically render a child's verification legally meaningless. *(Cf., People v Pierre, supra.)* Persons below 16 and above 12 are presumed to understand

10. The People argue that word "testify", as used in CPL 60.20, denotes only oral statements. Neither the Criminal Procedure Law nor the Penal Law contains a legislative definition of general application. The perjury article of the Penal Law does define "testimony" narrowly as an oral statement made under oath in a judicial or other official proceeding, but limits its applicability to that article only. (Penal Law art 210.) CPL 60.20 itself presupposes a broader definition, because it permits unsworn testimony under certain circumstances. Other definitions of general applicability are also broader, encompassing both written and oral statements. *(See,* Webster's New Twentieth Century Dictionary 1886 [unabridged 2d ed]; Black's Law Dictionary 1324 [5th ed].) The People also rely on *Matter of Parks* (78 Misc 2d 281, 285 [Fam Ct, Dutchess County]). While *Parks* does construe CPL 60.20 as limited to trial testimony, it does so in dicta unnecessary to it holding that an unsworn, uncorroborated statement can serve as the basis for the information and belief recited in a Family Court juvenile delinquency petition.

11. In the past, this problem could have been discovered at a preliminary hearing, or by the prosecutor's inability to produce a witness capable of giving legally sufficient and credible testimony at a preliminary hearing. The elimination of misdemeanor preliminary hearings may have been intended to promote judicial economy and witness convenience *(see,* L 1978, ch 481, § 10, repealing CPL former 170.75); in practice, it has often been counterproductive, resulting in greater delay and congestion. It has acted as a disincentive for the District Attorney to promptly interview witnesses and has prevented the court from winnowing out many insufficient cases until the trial stage.

the obligation of the oath, and routinely testify as sworn witnesses. Those below 12 may testify under oath if found to be swearable, and may testify unsworn if found to be unswearable but reliable.[12] (CPL 60.20.) The law does not bar a child's oral testimony because he cannot be prosecuted for perjury (Penal Law §§ 210.05-210.15); by parity of reasoning, it should not bar reception of a child's written deposition. Perjury or false written representation by a minor could, like any other crime, be adjudicated in a juvenile delinquency proceeding in the Family Court.[13] *(See,* Family Ct Act § 301.2.) The issue is not whether a violation is prosecutable, but whether the witness understands what he is signing, appreciates that it has legal consequences, and evinces a commitment to tell the truth. Consequently, age per se should not bar verification by the self-attestation method of CPL 100.30 (1) (d).

It is readily apparent that the absence of a mandatory age-specific verification procedure is no legislative oversight. None was included since none was required. It would therefore be an improper arrogation of legislative power, and a violation of the principle of the separation of powers, for this court to read such a requirement into the statute.

CONCLUSION

Accordingly, this court holds that verification by a minor of any age may be effected by any of the methods permitted by CPL 100.30, provided that the deponent has the capacity and understanding sufficient to make the verification meaningful. The child need not swear before the court. Neither must the court conduct a voir dire to determine the child's understanding.

However, since children under 12 are presumed to lack competence, their out-of-court verifications are inherently suspect. While not per se invalid, they are subject to review by the court *sua sponte* or on motion. Accordingly, the prosecutor assumes the risk of defective verification and the possibility of dismissal if he chooses to use one of the out-of-court methods.

It would be far preferable to bring a child or other deponent of questionable competency or understanding before the court

---

12. A conviction may not rest only on such unsworn testimony. (CPL 60.20 [3].)

13. This court does not advocate threatening a child with Family Court proceedings. A child's lack of veracity may arise from fear, immaturity, emotional problems, familial or peer pressure, or misguided suggestion from social workers or law enforcement officers.

at the earliest possible time[14] for an appropriate examination conducted by the Judge. Even though the statute does not require that a deponent swearing before the court do so in the presence of counsel (see, CPL 100.30 [1] [a]), conduct of the examination in the presence of both attorneys permits them to suggest questions and argue the sufficiency of the deponent's understanding. It enables the court to promptly rule, obviating later motion practice. The proceeding should be recorded to permit appellate review. When it concerns a young or shy child, the examination may be conducted in camera.

If verification is effected by swearing before the court ex parte, or by one of the out-of-court methods, protracted motion practice and delay may ensue, as it has in the instant case. Moreover, a hearing would then be required on an issue difficult to prove after the passage of time: Did the child deponent have the requisite mental capacity and understanding *at the time of the purported verification?* Given the presumption, the burden of proof must necessarily rest on the prosecution.

Conversely, verification by a person 12 or over is presumptively sufficient if effected by any statutory method. Nevertheless, evidence that the deponent lacked capacity and understanding, like any other defect in the information, would still be a ground for a motion to dismiss. Where a sufficient showing exists to raise a triable factual question, a hearing is required. Given the presumption, the defendant would bear the burden of proof.

### ORDER

The District Attorney shall produce the two complaining witnesses on the next adjournment for a hearing before me to determine whether each properly verified the supporting depositions on the dates alleged by the People. The issues to be determined include: Whether at the time of the purported verifications, each witness had the testimonial capacity required for verification; whether she read and understood both the supporting deposition and the complaint; whether she was

---

14. To avoid prejudicial delay, the court should direct the witness to appear as soon as practicable following disclosure of the circumstances giving rise to doubts about competence. Involvement of a child is usually apparent as early as the arraignment. Indeed, since age is often an element of crimes involving children, it should be pleaded in the complaint.

made aware of the meaning of these documents; and whether she understood the consequences of making false representations.

The balance of the motion is held in abeyance pending determination.